FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 17 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANTHONY MURRAY,

           Plaintiff,

           v.

The CITY OF NEW YORK, et al.,

           Defendants.
------------------------------------------------------------X

**DECISION & ORDER**
15-CV-0599 (WFK) (PK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Anthony Murray ("Plaintiff") brings this action against the City of New York, several New York City Police Department ("NYPD") officers, and several NYPD auxiliary police officers ("APOs"), alleging violations of his constitutional rights arising out of his July 16, 2013 arrest. *See generally* Am. Compl., ECF No. 19. The parties subsequently stipulated to the dismissal of Plaintiff's claims against all defendants other than Police Officer John Swofford ("Officer Swofford"), APO Jason Marshall ("APO Marshall"), Sergeant Sandrina Osborne ("Sergeant Osborne"), APO Sergeant Kenson Phillips ("APO Phillips"),[1] and APO Andre Atkinson ("APO Atkinson").[2] ECF No. 56. Officer Swofford, Sergeant Osborne, and APO Atkinson (together, the "Moving Defendants") now move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* ECF Nos. 61-69. For the reasons stated below, their motion is GRANTED.

## BACKGROUND

### I.   Statement of Facts[3]

On July 16, 2013, NYPD auxiliary police officers APO Marshall, APO Phillips, and APO Atkinson were patrolling in and around Crown Heights, Brooklyn, in a marked NYPD vehicle.

---

[1] The Amended Complaint identifies APO Phillips as "Kenton Phillips," Am. Compl. ¶ 11, but APO Phillips has indicated his name is spelled "Kenson," Tr. of Phillips Dep. at 4:2, Ex. A to Opp., ECF No. 67-1.

[2] The Amended Complaint identifies APO Atkinson as a "Police Officer," Am. Compl. ¶ 12, but he was an APO when Plaintiff was arrested, Tr. of Atkinson Dep. at 5:5-21, Ex. B to Opp., ECF No. 67-2. The Court adopts the "APO" designation for clarity.

[3] The Court draws its account of the facts from the parties' submissions, including: Moving Defendants' memorandum of law in support of their motion ("MSJ"), ECF No. 63; their declaration in support of their motion, ECF No. 64, and the exhibits thereto, ECF Nos. 64-1 to 64-9; Plaintiff's memorandum of law in opposition ("Opp."), ECF No. 66, and the exhibits attached thereto, ECF Nos. 67-1 to 67-10; Moving Defendants' reply memorandum of law ("Reply"), ECF No. 69; Moving Defendants' Local Civil Rule 56.1 statement ("Defs.' 56.1"), ECF No. 62; and Plaintiff's Local Civil Rule 56.1 counter-statement ("Pl.'s 56.1"), ECF No. 65. Citations to a

Defs.' 56.1 ¶ 1; Pl.'s 56.1 ¶ 1; *see also* Tr. of Phillips Dep. ("Phillips Tr.") at 18:20-19:6, Ex. A to Opp., ECF No. 67-1 (identifying neighborhood in which Phillips was on patrol as Crown Heights). APO Phillips was driving the vehicle, APO Atkinson was in the front passenger seat and APO Marshall was in the back seat. Defs.' 56.1 ¶ 2; Pl.'s 56.1 ¶ 2. Plaintiff was standing on Prospect Avenue with a friend, Jawwadd Sidberry, when the APOs drove by. Defs.' 56.1 ¶ 3; Pl.'s 56.1 ¶ 3. The APOs initially drove past Plaintiff and Sidberry but then circled back and got out of the car. Defs.' 56.1 ¶¶ 4-6; Pl.'s 56.1 ¶¶ 4-5; Tr. of Atkinson Dep. ("Atkinson Tr.") at 25:24-26:5, Ex. B to Opp., ECF No. 67-2 (noting all of the APOs exited the vehicle).[4]

APO Phillips and APO Marshall then approached Plaintiff; although the parties dispute whether APO Atkinson remained near the car at this time, *compare* Defs.' 56.1 ¶¶ 5-6, *with* Pl.'s 56.1 ¶¶ 5-7, *and* Tr. of Plaintiff Dep. ("Pl. Tr.") at 82:14-83:22, Ex. E to Opp., ECF No. 67-5 (indicating one of the APOs stayed near the vehicle), APO Atkinson testified at his deposition that he had also approached Plaintiff at this time, Atkinson Tr. at 26:4-27:12. A confrontation between Plaintiff and the APOs ensued, after which the APOs returned to their car. Defs.' 56.1 ¶¶ 7-8; Pl.'s 56.1 ¶ 7; *see also* Pl. Tr. at 82:17-87:8 (describing APOs as trying to put Plaintiff's hands behind his back and him resisting). The APOs began to drive away, at which point APO Marshall realized he no longer had his NYPD-issued radio, so the APOs turned the vehicle around and returned to where they had encountered Plaintiff. Defs.' 56.1 ¶¶ 8-9; Pl. Tr. at 86:24-

---

party's Rule 56.1 statement incorporate by reference the documents cited therein. The Court takes to be true facts stated in a party's Rule 56.1 statement that are supported by testimonial or documentary evidence and denied by the other party with only a conclusory statement without citation to conflicting testimonial or documentary evidence. *See* E.D.N.Y. Local Rule 56.1(c), (d).

[4] The parties do not mention the purported reasons for the APOs' actions in their 56.1 statements, but the Court notes that APO Phillips testified at his deposition that they turned back because they had seen Plaintiff "put his hands behind his back [as if he were] trying to hide something." Phillips Tr. at 20:9-24. APO Phillips and APO Atkinson also testified that it was not their role to investigate potential crimes, but rather to observe and report suspicious activity. *Id.* at 23:7-12; Atkinson Tr. at 28:11-23.

87:24. The APOs again exited the vehicle, Pl.'s 56.1 ¶ 10; Phillips Tr. at 45:15-19; Atkinson Tr. at 35:10-18, and APO Marshall began to look for his radio, Defs.' 56.1 ¶ 10; Pl. Tr. at 90:24-91:8. APO Phillips approached Plaintiff and asked him where the radio was; Plaintiff began walking up the street and APO Phillips followed him, continuing to ask where the radio was. Defs.' 56.1 ¶¶ 10-12; Pl.'s 56.1 ¶ 12; Pl. Tr. at 92:4-21. Plaintiff asked APO Phillips to leave him alone several times, but APO Phillips continued to pursue him. Defs.' 56.1 ¶¶ 12-13; Pl.'s 56.1 ¶ 12. APO Phillips then called for NYPD backup using his walkie-talkie. Defs.' 56.1 ¶ 14; Pl.'s 56.1 ¶ 14. Plaintiff and APO Phillips then stopped and waited for the NYPD to arrive. Defs.' 56.1 ¶¶ 15-16; Pl.'s 56.1 ¶¶ 15-16; see also Pl. Tr. at 99:3-24.

The NYPD arrived between five and eight minutes later. Defs.' 56.1 ¶ 17; Pl.'s 56.1 ¶ 17. Specifically, Officer Swofford and Officer Connor Lichte were on patrol when they received APO Phillips's request for assistance, and they responded to the scene. Defs.' 56.1 ¶¶ 18-19; Pl.'s 56.1 ¶¶ 18-19. Officers Swofford and Lichte spoke with APO Phillips and APO Marshall; APO Atkinson did not speak with the NYPD officers. Defs.' 56.1 ¶¶ 20-22; Pl.'s 56.1 ¶¶ 20, 22. APO Marshall told Officer Swofford he had seen Plaintiff pick up the radio and throw it to a third party. Defs.' 56.1 ¶¶ 23-25; Pl.'s 56.1 ¶¶ 23-25; Tr. of Marshall Dep. at 42:17-22, Ex. D to Opp., ECF No. 67-4. Plaintiff confirmed at his deposition that he heard at least one of the APOs tell the arresting officer that he had taken the radio and passed it to a friend. Pl. Tr. at 112:1-113:2; see also Defs.' 56.1 ¶ 25. Officer Swofford then arrested Plaintiff, handcuffed him, and placed him in a police car. Id. ¶¶ 26-27; Pl.'s 56.1 ¶¶ 26-27.

Shortly thereafter, Sergeant Osborne arrived on the scene to verify the arrest. Defs.' 56.1 ¶¶ 28-29; Pl.'s 56.1 ¶¶ 28-29. She did so based on what she was told by Officer Swofford,

3

Defs.' 56.1 ¶ 30, specifically, that an APO had dropped his radio and then observed Plaintiff pick it up and pass it to someone else, Tr. of Osborne Dep. at 14:17-16:11, Ex. J to Opp., ECF No. 67-10; *cf.* Pl.'s 56.1 ¶ 30 (denying Moving Defendants' statement that Sergeant Osborne verified the arrest based on what she was told by Officer Swofford, but citing deposition transcript where she relayed substantially the same version of events). Sergeant Osborne was only on the scene briefly and never spoke with the District Attorney's office about Plaintiff's case. Defs.' 56.1 ¶¶ 31-32; Pl.'s 56.1 ¶¶ 31-32.

Plaintiff was then transported to the 77th Precinct by Officer Swofford, where he was held for approximately six hours before being transferred to Central Booking. Defs.' 56.1 ¶¶ 33-34; Pl.'s 56.1 ¶¶ 33-34. Plaintiff was held at Central Booking for approximately one hour before he was arraigned on charges of: (1) grand larceny in the fourth degree; (2) petit larceny; (3) criminal possession of stolen property in the fourth degree; (4) criminal possession of stolen property in the fifth degree; (5) resisting arrest; and (6) disorderly conduct. Defs.' 56.1 ¶¶ 35-36; Pl.'s 56.1 ¶¶ 35-36. Thereafter, he was released on his own recognizance. Defs.' 56.1 ¶ 36; Pl.'s 56.1 ¶ 36. Officer Swofford signed the criminal court complaint based on information conveyed to him by one of the APOs. *See* Defs.' 56.1 ¶ 37; Pl.'s 56.1 ¶ 37; *cf.* Tr. of Swofford Dep. at 14:2-16:4, Ex. C to Opp., ECF No. 67-3 (testifying he had arrested Plaintiff based on the statement of an APO present at the scene). APO Atkinson never spoke with the District Attorney's office about Plaintiff's case. Defs.' 56.1 ¶ 38; Pl.'s 56.1 ¶ 38.

## II. Procedural History

Plaintiff filed his initial Complaint *pro se* on February 6, 2015, ECF No. 1, and amended his Complaint on December 23, 2015, ECF No. 19, after acquiring counsel. As noted, the parties

4

subsequently stipulated to the dismissal of certain of Plaintiff's claims and certain of the named defendants; this stipulation was signed by the Hon. Nina Gershon on November 7, 2016, and entered on November 8, 2016. ECF No. 56. The Moving Defendants submitted their fully briefed motion for summary judgment on January 5 and 6, 2017. ECF Nos. 61-69. This matter was transferred from Judge Gershon to this Court February 16, 2017.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the "Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citation omitted). The district court's role is not to weigh the evidence or determine the truth of the matter, but rather to answer "the threshold inquiry of . . . whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court must therefore determine if "a rational trier of fact [could] find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "specific facts showing that there is a genuine issue for trial." *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita*, 475 U.S. at 586). "The mere existence of a scintilla of evidence" in support of the non-movant will be insufficient to defeat a summary judgment motion. *Anderson*, 477 U.S. at 252. Rather, the non-moving party must make a showing sufficient to establish the existence of each element

constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 451-52 (2d Cir. 1999).

## ANALYSIS

The Moving Defendants contend that Plaintiff's remaining claims against them fail as a matter of law because, in brief, the nature of their involvement in the events at issue cannot support the claims asserted. The Court addresses each claim in turn.

### I. False Arrest

#### A. Officer Swofford

The Moving Defendants argue Plaintiff's false arrest claim against Officer Swofford fails as a matter of law because he was entitled to rely on the representations of the APOs in making the arrest or is entitled to qualified immunity. As discussed below, the Court finds Officer Swofford is entitled to qualified immunity as to Plaintiff's false arrest claim.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Therefore, to plead false arrest, a plaintiff must allege: (1) the defendants "intended to confine" him, (2) he "was conscious of the confinement," (3) he "did not consent to the confinement," and (4) his "confinement was not otherwise privileged." *Broughton v. State*, 37 N.Y.2d 451, 456 (1975). An arrest is "privileged" if it was "based on probable cause," *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks and

citation omitted), so the "existence of probable cause to arrest . . . is a complete defense to an action for false arrest," *Weyant*, 101 F.3d at 852 (internal quotation marks and citation omitted).

"[A] police officer is entitled to qualified immunity if it was objectively reasonable for him to believe that his actions did not violate [the] plaintiff's clearly established [constitutional] rights." *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 577 (S.D.N.Y. 2002) (McMahon, J.) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). "The right to be free from arrest . . . in the absence of probable cause is a long established constitutional right." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). A police officer is entitled to qualified immunity for a false arrest claim, however, where he has "arguable probable cause to arrest," *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (internal quotation marks and citation omitted), which exists if either "(1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest," *Ricciuti*, 124 F.3d at 128.

When determining whether there is probable cause to make an arrest, a police officer is "entitled to rely on the victims' allegations that a crime has been committed" as well as "the allegations of fellow police officers," *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citations omitted); *see also Loria v. Gorman*, 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful."), which may extend to auxiliary police officers, *cf. People v. Rosario*, 78 N.Y.2d 583, 589 (1991) (finding NYPD officer had probable cause to arrest based on representation of auxiliary police officer under "fellow officer" rule).[5] An officer

---

[5] Although the Moving Defendants cite to *United States v. Colon*, 250 F.3d 130 (2d Cir. 2001), to support their argument that this privilege extends to APOs, the *Colon* court merely described, rather than adopted, the holding of

7

may also reasonably rely on credible statements made by an eyewitness. *See Weiner v. McKeefery*, 90 F. Supp. 3d 17, 30 (E.D.N.Y. 2015) (Bianco, J.) (finding police officer reasonably relied on statement of credible eyewitness in determining there was probable cause to arrest); *Celestin v. City of New York*, 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008) (Glasser, J.) ("A positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest.")

In this instance, the undisputed facts establish that Officer Swofford arrested Plaintiff based solely on the representations of the APOs, as he did not conduct an independent investigation of the scene. Although Plaintiff asserts there is a disputed issue of fact as to whether the APOs were truthful when they spoke with Officer Swofford, he testified at his deposition that he heard an APO tell Officer Swofford that Plaintiff had taken one of their radios and then passed it to a friend, and therefore cannot credibly argue there is a dispute as to what information Officer Swofford was told and relied upon. Given the undisputed facts, it was reasonable for Officer Swofford to rely on the statements of the APOs—one of whom was the complaining victim and all of whom purported to be eyewitnesses to the events—in determining there was probable cause to make the arrest. Plaintiff has not presented evidence of any circumstances indicating Officer Swofford should have found these statements were unreliable.

Plaintiff also contends Officer Swofford should have investigated the circumstances more fully based on Plaintiff's statements during his arrest, but, "[g]enerally, a suspect's 'denials are insufficient to obviate probable cause.'" *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 31-32 (E.D.N.Y. 2015) (Bianco, J.) (quoting *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 168

---

*Rosario*. Accordingly, *Colon* does not constitute binding precedent on this question, contrary to the Moving Defendants' apparent assertion.

(E.D.N.Y. 2010) (Bianco, J.)). Indeed, Officer Swofford was not required to conduct a more fulsome investigation before completing the arrest, as "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is [neither] required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Ricciuti*, 124 F.3d at 128 (citation omitted), nor "require[d] . . . [to] affirmatively seek out reasons to doubt the victim or witness where none are apparent," *Parisi v. Suffolk Cty.*, 04-CV-2187, 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009) (Vitaliano, J.). To "insist upon a collateral investigation into the credibility of the complainants would place an unfair burden on law enforcement officers." *McDermott v. City of New York*, 94-CV-2145, 1995 WL 347041, at *4 (E.D.N.Y. May 30, 1995) (Glasser, J.). Accordingly, under the circumstances established by the undisputed facts of record, it was objectively reasonable for Officer Swofford to believe Plaintiff's arrest was lawful, and therefore he is entitled to qualified immunity on Plaintiff's false arrest claim. The Moving Defendant's motion for summary judgment is therefore GRANTED as to Plaintiff's false arrest claim against Officer Swofford.

### B. Sergeant Osborne and APO Atkinson

Sergeant Osborne and APO Atkinson contend they were not personally involved in Plaintiff's arrest and so cannot be liable for false arrest. The Court agrees.

Personal involvement in the underlying events is an essential element of a § 1983 claim against an individual state actor. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). A plaintiff must therefore plead that each defendant "personal[ly] participat[ed]" in the deprivation of his constitutional rights and "ha[d] knowledge of the facts that rendered the conduct illegal" to state a claim against them. *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).

9

The record here establishes that Sergeant Osborne's role in the underlying events was limited to verifying the arrest based on the statements of the arresting officer after the arrest had already been effectuated. "A police officer can only be held liable for a false arrest that occurs outside his presence if he 'had reason to know' that such a false arrest was likely to occur," *Little v. City of New York*, 487 F. Supp. 2d 426, 438 (S.D.N.Y. 2007) (Chin, J.) (quoting *Escalera v. Lunn*, 361 F.3d 737, 748 n.4 (2d Cir. 2004)), and Plaintiff here has presented no facts—other than his own protestations of innocence, which are given little weight at the time of arrest—to suggest Sergeant Osborne should have doubted the facts presented to her at the scene. Sergeant Osborne was also not required to conduct an independent investigation in order to verify the arrest, as she "had a reasonable basis for making the probable cause determination" where "the version of events as narrated by the officers present at the scene was not clearly implausible, and [she] had no reason to question the officers' veracity." *Martinez*, 202 F.3d at 635 (finding supervisory officer not present at the scene of the crime entitled to rely on statements of other officers and witnesses in affirming initial arrest). Accordingly, she is entitled to summary judgment as to Plaintiff's false arrest claim.

APO Atkinson, on the other hand, was present for Plaintiff's arrest, but the undisputed facts establish that he did not speak with the arresting officers regarding the loss of the radio and therefore did not initiate Plaintiff's arrest. Further, Plaintiff has presented no evidence that APO Atkinson was otherwise involved in Plaintiff's arrest, for instance that he physically detained him or otherwise contributed to his confinement. Accordingly, he cannot be held liable for false arrest. *See Lee v. City of New York*, 00-CV-3181, 2002 WL 1732810, at *8 (E.D.N.Y. July 22, 2002) (Gleeson, J.) (granting summary judgment on false arrest claims where plaintiff failed to

proffer facts establishing defendant officers were "actively involved [in] the arrest"). The Moving Defendant's motion for summary judgment is therefore GRANTED as to Plaintiff's false arrest claims against Sergeant Osborne and APO Atkinson.

## II. Malicious Prosecution

### A. Officer Swofford

The Moving Defendants contend that Officer Swofford is also entitled to qualified immunity as to Plaintiff's malicious prosecution claim or, absent a finding of qualified immunity, that Plaintiff has failed to establish Officer Swofford acted with malice in initiating the prosecution of Plaintiff. As discussed below, the Court finds Officer Swofford is also entitled to qualified immunity on this claim.

Under New York law, Plaintiff must prove four elements to establish a claim for malicious prosecution: (1) "the initiation of a proceeding," (2) termination of said proceeding favorably to the plaintiff, (3) "lack of probable cause," and (4) malice. *Savino*, 331 F.3d at 72. A claim for malicious prosecution may lie where "probable cause is present at the time of arrest" but "evidence . . . surface[s] which would eliminate that probable cause" prior to the initiation of a proceeding. *Cox v. County of Suffolk*, 780 F. Supp. 103, 108 (E.D.N.Y. 1991) (Wexler, J.). "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *as amended* (May 21, 1996) (citing *Callan v. State*, 73 N.Y.2d 731, 732 (1988)).

Plaintiff has not established any intervening facts or circumstances that would have caused the arguable probable cause Officer Swofford had to arrest him to dissipate by the time Officer Swofford swore a criminal complaint against him. Specifically, although Plaintiff

11

contends the radio was found prior to the filing of the criminal complaint, Plaintiff has asserted no facts demonstrating that Officer Swofford was made aware of that discovery before signing the criminal complaint. Consequently, Plaintiff has failed to adduce sufficient evidence to demonstrate that Officer Swofford, who had arguable probable cause to make the arrest, should not also have qualified immunity as to Plaintiff's malicious prosecution claim. *See Lowth*, 82 F.3d at 572 (finding arresting officer entitled to qualified immunity on malicious prosecution claims even where "[w]ith some distance from the immediate confusion of the events . . . and with the additional knowledge that he had acquired about [the plaintiff's] circumstances, [the defendant officer] might, perhaps, have been wiser had he not" filed additional charges against the plaintiff); *cf. Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 128 (2d Cir. 2009) (summary order) (affirming dismissal on summary judgment of malicious prosecution claim where plaintiff did not demonstrate probable cause dissipated after arrest). The Moving Defendant's motion for summary judgment is therefore GRANTED as to Plaintiff's malicious prosecution claim against Officer Swofford.

### B. Sergeant Osborne and APO Atkinson

As to Sergeant Osborne and APO Atkinson, the undisputed facts establish that neither took any steps to initiate the proceedings against Plaintiff, as neither spoke with the District Attorney's Office regarding his prosecution and Plaintiff does not allege they took any other steps to further the prosecution. Consequently, neither can be held liable for the malicious prosecution of Plaintiff. The Moving Defendant's motion for summary judgment is therefore GRANTED as to these claims against Sergeant Osborne and APO Atkinson.

### III. Denial of Right to Fair Trial

The Moving Defendants next contend Plaintiff has failed to adduce evidence demonstrating they violated his constitutional right to a fair trial by transmitting false information to the District Attorney's office. The Court agrees.

To state a claim that he has been deprived of his constitutional right to a fair trial, Plaintiff must show that "an (1) investigating official (2) fabricate[d] evidence (3) that [was] likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) [he] suffer[ed] a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order). Plaintiff's claims against Sergeant Osborne and APO Atkinson fail because it is undisputed that they made no contact with the prosecutors in this matter and therefore could not have forwarded false information to them.

As to Officer Swofford, Plaintiff argues his fair trial claim must be presented to a jury because there is a dispute as to whether Officer Swofford had indeed fabricated false evidence against him. Plaintiff's argument, though, is primarily premised on the conflicting testimonies of the APOs as to what happened before Officer Swofford arrived on the scene, and Plaintiff has not proffered any facts suggesting that Officer Swofford should have believed the APOs' statements were unreliable or that Officer Swofford himself fabricated any evidence. Plaintiff's right to a fair trial claim thus fails against Officer Swofford as well. The Moving Defendant's motion for summary judgment is therefore GRANTED as to these claims.

### IV. Failure to Intervene

Last, the Moving Defendants contend they may not be held liable for failure to intervene to prevent any alleged constitutional violations. Again, the Court agrees.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Bremen*, 17 F.3d 552, 557 (2d Cir. 1994). "An officer who fails to intervene is liable for the preventable harm caused by other officers where that officer observes or has reason to know" that other officers have committed a constitutional violation, provided the officer has "a realistic opportunity to intervene to prevent the harm from occurring." *Id.* "Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable." *Sanabria v. Detective Shawn Tezlof*, 11-CV-6578, 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (Román, J.).

In this instance, Officer Swofford directly participated in the allegedly unlawful arrest and therefore cannot be held liable for failure to intervene. *Cf. Cooper v. Dieugenia*, 14-CV-6136, 2017 WL 818367, at *8 (E.D.N.Y. Feb. 27, 2017) (Chen, J.) (dismissing failure to intervene claim where plaintiff was "actually relying on a theory of direct participation" as to that defendant). Sergeant Osborne, on the other hand, was not present for the arrest and, once she arrived, reasonably believed the arrest had been lawful, so she did not have a realistic opportunity to intervene to prevent the alleged constitutional violations. *Chepilko v. City of New York*, 06-CV-5491, 2012 WL 398700, at *9 (E.D.N.Y. Feb. 6, 2012) (Ross, J.) (dismissing on summary judgment failure to intervene claim where officer reasonably believed arrest conducted by others had been lawful).

APO Atkinson, though, was present during the entire course of events that led to Plaintiff's arrest and therefore could have been aware if APOs Phillips and Marshall had relayed false information to Officer Swofford, which is presumably the basis for the surviving false

arrest claims against them. *Cf. Chepilko*, 2012 WL 398700, at *10 (denying summary judgment on false arrest claims against non-police officer state actor who was alleged to have provided false information to officers that led to the plaintiff's arrest). As such, APO Atkinson may have had a reasonable opportunity to act to prevent Plaintiff's arrest by clarifying the underlying facts for Officer Swofford, even if he was not empowered to intervene once Officer Swofford had decided to make the arrest.

Even so, the Moving Defendants contend APO Atkinson had no affirmative duty to intervene, as this duty applies only to "law enforcement officials," *Anderson*, 17 F.3d at 557, and not civilian state actors, *see, e.g.*, *Rendely v. Town of Huntington*, 03-CV-03805, 2006 WL 5217083, at *6 (E.D.N.Y. Aug. 30, 2006) (Vitaliano, J.) (finding failure to intervene claims could not be brought against civilian employees of public safety department because they had no duty to intervene); *Phoenix v. Reddish*, 175 F. Supp. 2d 215, 220 (D. Conn. 2001) (Nevas, J.) (finding civilian mental health worker had no clearly established duty to intervene); *see also Musso v. Hourigan*, 836 F.2d 736, 743 (2d Cir. 1988) ("As a general rule, a government official is not liable for failing to prevent another from violating a person's constitutional rights, unless the official is charged with an affirmative duty to act."). Unlike most civilian state actors, though, NYPD APOs operate "under the direct command and control of the police department," *People v. Luciani*, 466 N.Y.S.2d 638, 643 (Sup. Ct. 1983) (finding NYPD APOs subject to "equal constraints and to the same evidentiary rules" as law enforcement officials when on duty), and, in some circumstances, may be considered "fellow officer[s]," *Rosario*, 78 N.Y.2d at 588 (finding "fellow officer" rule regarding probable cause determination extends to APOs). Indeed, the Moving Defendants urge this Court to consider APOs to be equivalent to NYPD officers

when offering evidence in favor of an arrest, but not when they have a reasonable opportunity to prevent false evidence from being offered to the same end. While this is incongruous as a matter of logic (and perhaps as a matter of policy), this Court has not found—and Plaintiff has not offered—any legal basis to impose this duty on APO Atkinson in this case. The Moving Defendant's motion for summary judgment is therefore GRANTED as to Plaintiff's failure to intervene claims against the Moving Defendants.

## CONCLUSION

For the reasons stated above, the Moving Defendants' motion for partial summary judgment is GRANTED. The Clerk of Court is respectfully requested to terminate the motion pending at ECF No. 61.

SO ORDERED.

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 16, 2017
Brooklyn, New York