UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
ANTHONY MURRAY,                                          :
                                                         :
                            Plaintiff,           :   **REPORT AND**
                                                         :   **RECOMMENDATION**
                  -against-                         :   15-CV-599(RPK)(PK)
                                                         :
JASON MARSHALL et al.,                                   :
                                                         :
                           Defendants.          :
-------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

       Plaintiff Anthony Murray ("Plaintiff") brought this action under 42 U.S.C. § 1983 against the City of New York, Police Officer John Swofford, Peace Officer Jason Marshall, Sergeant Wayne Mims, Police Officer Connor Lichte, Sergeant Sandrina Osborne, Police Officer Zakee Smith, Sergeant Kenton Phillips, and Police Officer Atkinson ("Defendants"). (Compl., Dkt. 1.) Before the Court on referral is Plaintiff's Motion for Attorneys' Fees (the "Motion"). (Dkt. 104.) For the reasons discussed below, the Motion is granted, but at a reduced amount.

## PROCEDURAL HISTORY

       On July 16, 2013, Plaintiff was arrested and charged with theft. (Amended Complaint ¶ 2, Dkt. 19.) After charges were dismissed on August 1, 2014, Plaintiff retained attorney David A. Zelman ("Zelman") on September 22, 2014 to represent him in bringing 42 U.S.C. § 1983 claims against the City of New York and officers involved in his arrest and prosecution. (Zelman Affirmation in Support of the Motion ("Zelman Aff.") ¶¶ 2, 3, Dkt. 104.)

       Plaintiff filed the Complaint on February 6, 2015 (Dkt. 1), and an Amended Complaint on December 23, 2015. (Dkt. 19.) After completion of discovery, Defendants moved for partial summary judgment on January 5, 2017 (Dkt. 61), which the Honorable William F. Kuntz granted on

1

November 17, 2017. (Dkt. 77.) A final pretrial conference was held on June 11, 2018 (Minute Entry dated 6/11/2018), and trial was scheduled for January 22, 2019. (Order dated 12/11/2018.)

On January 2, 2019, Defendants made an offer of judgment under Fed. R. Civ. P 68 in the amount of $15,001, "plus reasonable attorneys' fees, expenses, and costs to the date of this offer…." (Ex. C to Declaration of Valerie E. Smith in Opposition to the Motion ("Smith Decl."), "Rule 68 Offer"; Dkt. 106-3 at 1.) Plaintiff accepted the Rule 68 Offer on January 8, 2019 (Notice of Acceptance with Offer of Judgment, Dkt. 95), and judgment was entered on January 10, 2019. (Dkt. 96.)

On July 29, 2019, Plaintiff filed the Motion. (Dkt. 104.)

## ARGUMENTS

Plaintiff seeks $80,942.30 in fees and expenses. (Zelman Aff. ¶¶ 11, 14, 17, 19.)

Defendants contend that Plaintiff is only entitled to $17,466.50 because the requested hours and rates are unreasonable and excessive, and because Plaintiff is not entitled to attorney's fees incurred after the date of the Rule 68 Offer, or post-judgment interest. (Defendants' Opposition to Motion ("Defs.' Opp."), Dkt. 107.)

## DISCUSSION

I. **Reasonable Attorneys' Fees**

A. **Legal Standard**

For cases brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Courts are granted "great leeway" in evaluating the award of attorneys' fees. *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980). "If the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." *Id.*

2

In determining attorneys' fees, courts routinely use the lodestar method, the "product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Scharff v. Cty. of Nassau*, No. 10-CV-4208 (DRH)(GRB), 2016 WL 3166848, at *3 (E.D.N.Y. May 20, 2016), *R&R adopted*, 2016 WL 3172798 (E.D.N.Y. June 6, 2016). To calculate the lodestar, the Court exercises "broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006).

The party applying for fees must provide contemporaneous timesheets to document counsel's work and must support the hourly rates with evidence of counsel's expertise and prevailing market rates. *Riley v. City of New York*, No. 10-CV-2513 (MKB), 2015 WL 9592518, at *1 (E.D.N.Y. Dec. 31, 2015).

1. Hourly Rate

A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). A court must "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* Those factors include the attorney's experience and expertise, the novelty and complexity of the issues presented, and the overall success achieved in the case. *Brady*, 455 F. Supp. 2d at 204; *see also Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013). When analyzing an attorney's appropriate hourly rate, courts look to "rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted) (quoting *Blum v. Stenson*, 465 U.S. 886 at n.11). The "community" is generally the district in which the

3

reviewing court sits, *Scharff,* 2016 WL 3166848 at *4, and attorneys' fees are generally based on the rate within a specific district. *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).

Plaintiff seeks hourly rates of $450 for Zelman, $250 for Andrew Rabin, $300 for Joshua Tey, $275 for Isaac Cweibeker, and $95 for an unidentified paralegal. (Zelman Aff. ¶ 11.)

Zelman manages a "small firm" bearing his name. (*Id.* ¶ 7.) He was admitted to the New York bar in 1999 and has been practicing in the area of police misconduct litigation for approximately 20 years, handling more than 250 cases. (*Id.*) Zelman seeks an hourly rate of $450, which he notes he was awarded in the Southern District of New York in 2016. *Thomas v. City of NY*, 09-CV-3162 (ALC), 2016 WL 319982, at *20 (S.D.N.Y. Jan. 25, 2016).

When looking at hourly rates in a case brought in the Eastern District of New York, courts should look at rates for similarly qualified counsel in this district. As recently as 2017, courts in the Eastern District of New York have set rates in Section 1983 cases at approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates. *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017). These are the rates which should be considered here.

In 2015, Zelman was awarded hourly rates of $350 and $325 in the Eastern District of New York. *See Walker v. City of New York*, No. 11-CV-314 (CBA), 2015 WL 4568305, at *5 (E.D.N.Y. July 28, 2015); *Coley v. City of New York*, No. 15-CV-5132 (KAM)(LB), 2016 WL 11263671, at *2 (E.D.N.Y. Dec. 30, 2016), *R&R adopted,* No. 15-CV-5132 (KAM)(LB), 2017 WL 1162177 (E.D.N.Y. Mar. 28, 2017). Zelman does not describe any publications or educational roles that would indicate that he has gained recognition as an expert in his field since then. There is also nothing about the complexity or success of this case which warrants awarding a higher rate. This case was not complicated and did not involve novel issues of law. While Zelman conducted "approximately 11

4

depositions," and handled "several motions … including defendants' lengthy summary judgment motion" (Zelman Reply ¶ 3), the sheer volume of work does not elevate the complexity of the case beyond a typical Section 1983 lawsuit. An upward adjustment for novelty or complexity is therefore not justified. *See Brady*, 455 F. Supp. 2d at 214 ("Absent extraordinary circumstances, the resulting calculation should not be adjusted.")

Plaintiff argues correctly that in reviewing attorneys' fees, the Court should not consider "proportionality" – the principle of reducing a fee to align better with a low award. *See Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005). Nevertheless, he also contends that the judgment obtained was "substantial," and therefore the overall success achieved in the case justifies a higher hourly rate for counsel. (Zelman Aff. ¶ 16.) While acceptance of a Rule 68 offer for $15,001 just weeks before trial is a generally successful outcome for Plaintiff, it is not the kind of success that justifies a greater than normal hourly rate for counsel.

Plaintiff's argument that he engaged in "efficient" litigation by withdrawing certain claims and executing a stipulation which limited issues addressed on summary judgment also does not support an award of a higher hourly rate. (See Zelman Aff. ¶ 30.) Based on the number of hours billed (discussed *infra*), counsel's handling of this case was not especially efficient.

In light of the foregoing, the undersigned respectfully recommends that Zelman be awarded the hourly rate of $350.

Plaintiff seeks an hourly rate of $250 for Rabin. (Zelman Aff. ¶ 11.) Rabin was admitted to the bar in 2014. (*Id.* ¶ 8.) Although he was awarded an hourly rate of $225 in the SDNY in 2016, *Thomas*, 2016 WL 319982, at *8, at the time he worked on this case from September 2014 to January 2015, he had less than two years of experience. (Ex. A to Zelman Aff. at 1-2, Dkt. 104.) Accordingly, he should be paid only at the rate for a very junior associate and the undersigned respectfully recommends that Rabin be awarded an hourly rate of $100. (See Defs.' Opp. at 19)

5

Plaintiff seeks an hourly rate of $300 for Tey. (Zelman Aff. ¶ 11.) Tey was admitted to the bar in 2014 (*Id.* ¶ 9) and was awarded an hourly rate of $225 in 2016 in the SDNY. *Thomas*, 2016 WL 319982, at *8. At the time he billed in this case from June 2015 to March 2016, he had less than two years of experience. (Ex. A to Zelman Aff. at 3-5.) Accordingly, the undersigned respectfully recommends that Tey be awarded an hourly rate of $100.

Plaintiff seeks an hourly rate of $275 for Cweibeker. (Zelman Aff. ¶ 11.) Cweibeker was admitted to the bar in 2016.[1] (*Id.* ¶ 10.) His billing entries in this case begin in April 2016 and end in May 2016, when he had less than one year of experience. (Ex. A to Zelman Aff. at 5-6.) Accordingly, the undersigned respectfully recommends that Cweibeker be awarded an hourly rate of $100.

Plaintiff seeks an hourly rate of $300 for Padilla. (Zelman Aff. ¶ 13.) Padilla is not affiliated with Zelman's firm; however, he has litigated police misconduct cases in the EDNY and SDNY since 2014 (*Id.* ¶ 12), handling more than 30 civil rights cases. (*Id.*) Plaintiff does not provide the year in which Padilla was admitted to the bar, but by the time he worked on this case in December 2018, he would have had at least four years of experience. Accordingly, the undersigned respectfully recommends that he be awarded an hourly rate of $200.

Plaintiff seeks an hourly rate of $95 for the paralegal work performed in the case. (Zelman Aff. ¶ 11.) Defendants argue that the rate for a paralegal, where no information has been provided about experience or qualifications, should not be higher than $80 per hour.[2] (Defs.' Opp. at 20.) *See Barkley v. United Homes, LLC*, No. 04-CV-875 (KAM) (RLM), 2012 WL 3095526, at *8 (E.D.N.Y. July 30, 2012). Based on the rate set in this district for paralegals in the absence of information

---

[1] Defendants question whether Cweibeker was admitted to the bar at the time he worked on this case (Defs.' Opp. at 19), but Plaintiff responded that all of the associates (including Cweibeker) "were and are" admitted. (Zelman Affirmation in Further Support of the Motion ("Zelman Reply") ¶ 17, Dkt. 103.)

[2] Defendants also argue that paralegal work in this case should be billed at $50 per hour, without providing further explanation. (Defs.' Opp. at 20.)

6

about their professional experience, the undersigned recommends that paralegal work in this case be awarded an hourly rate of $80. *See Id.*

        2. *Reasonableness of Hours Billed*

In determining the lodestar for attorney's fees, courts also evaluate whether the number of hours billed is reasonable. *See Millea*, 658 F.3d at 166; *Riley*, 2015 WL 9592518 at *3 ("[T]he Court's goal is to conduct a meaningful review of the hours claimed" by each attorney). The court "should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Defendants argue that several entries in Plaintiff's submitted billing records are vague, represent block billing, are unreasonable or non-compensable, or were in relation to unsuccessful motions. The undersigned agrees that the billing records show time spent on particular tasks that are not reasonable and accordingly reduces the hours for Zelman and Rabin by 20%.

        a. Vague

Defendants contend that entries in Plaintiff's counsel's time records are vague, such as "reviewing interrogatories" and "conversation with client". (Defs.' Opp. at 14.)

Courts in this district have found entries such as "processed documents" and "talk w/" various parties to be overly vague. *Cabrera v. Fischler*, 814 F. Supp. 269, 290 (E.D.N.Y. 1993), *aff'd in part, vacated in part, remanded sub nom. Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994). Other examples of nondescript billing include entries such as "Legal Research" and "Telephone Call." *Nu-Life Const. Corp. v. Bd. of Educ. of City of New York, Div. of Sch. Bldgs. of Bd. of Educ. of City of New York*, 795 F. Supp. 602, 607 (E.D.N.Y. 1992), *aff'd sub nom. Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994).

The billing statements submitted by Plaintiff are not as ambiguous as Defendants contend. For example, Defendants claim that on June 17, 2015, July 8, 2015, and July 9, 2015, Zelman bills

7

for "generally 'Reviewing Interrogatories'." (Defs.' Opp. at 4.) Each of those entries, however, actually reads, "review response to interrogatory" (Ex. A to Zelman Aff. at 3) and two of them are followed by billing entries by associate Tey, which state, "Revise response to First set of Interrogatories." (*Id.*) In context, those entries are not overly vague.

Likewise, Defendants argue that the time listed by Padilla, specifically 10 hours "Reviewing Deposition Transcripts and Case File," is vague and potentially unnecessary given that Padilla never submitted a notice of appearance in the case. (Defs.' Opp. at 6.) Zelman explains that he asked Padilla to join him as trial counsel and that Padilla's review of the entire file was necessary for them to discuss strategy sufficiently. (Zelman Aff. ¶ 4.) These entries for work on December 27 and 28, 2018 are within a month of the trial date. (Ex. B. to Zelman Aff. at 1, Dkt. 104.) The undersigned accepts Zelman's explanation and finds the entries listed for Padilla to be sufficiently descriptive and not vague.[3]

b. Block Billing

Defendants argue that several billing entries are examples of block billing, or the practice where "multiple tasks are aggregated into one billing entry." *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 283 (E.D.N.Y. 2008). As examples, they point to entries from November 24 and 27, 2016, which list "Draft/Research SJ brief" for Zelman. (Defs.' Opp. at 7, note 6; Ex. A to Zelman Aff. at 8.) Zelman explains that his practice is to research and draft concurrently. (Zelman Reply ¶ 8.) The undersigned finds this reasonable.

On the other hand, several entries not identified by Defendants, do constitute examples of block billing:

---

[3] Defendants also contend that Padilla's deposition of Jawwadd Sidberry should not be compensated because Padilla appeared on behalf of Sidberry, a non-party. (Defs.' Opp. at 9.) In Plaintiff's reply, Plaintiff agreed to remove the bill associated with this deposition. (Zelman Reply ¶ 12.)

- **Rabin**: 10/28/2014: "discuss with DZ, call criminal defense council re: arraignment Minutes, Voice mail, EM, draft minutes request:" 0.60 hours. (Ex. A to Zelman Aff. at 1.)
- **Rabin**: 12/4/2014: "spoke w court reporter re: minutes request, review file, discuss case w/DZ:" 0.40 hours. (*Id.*)
- **Tey**: 6/17/2015: "response to interrogatory[,] spoke to client." 0.50 hours. (*Id.* at 3.)

Most examples of block billing are entries for Rabin. The undersigned respectfully recommends a 10% reduction for the hours billed by Rabin.

    c.  Unreasonable/Non-Compensable

Defendants argue that several billing entries are for unreasonably long periods of time, given the attorney's experience level. For example, Defendants argue that 0.7 hours over two entries—May 26, 2015 and November 4, 2015—for Zelman reviewing the answer to the complaint is unreasonable. (Defs.' Opp. at 7.) However, two different answers were filed by different defendants on those two days; forty-two minutes to review two answers is not unreasonable.

Defendants argue that Zelman spent 1.4 hours reviewing responses to interrogatories when his associate Tey only spent 1.2 hours responding to the same interrogatories, and similarly that he spent 0.40 hours reviewing the amended complaint which took Tey 0.80 hours to revise. (*Id.*) Without copies of the interrogatories and responses, it is not possible to assess whether the time spent by each attorney was reasonable. The undersigned agrees, however, that the time spent on the amended complaint seems unreasonable based on the fact that the only apparent change from the initial complaint was the substitution of named defendants for the "John Does."

There are several additional entries that reflect an unreasonable amount of time spent on a task. On March 26, 2015, there is a one-hour entry for drafting and submitting an opposition to Defendants' request for more time to answer. (Ex. A to Zelman Aff. at 2.) This opposition,

9

however, is a half-page long and contains a recitation of simple facts. (Dkt. 8)  On May 27, 2015, there is an entry of 0.20 hours for review of a motion by Defendants to substitute attorney, and the next day an entry of 0.10 hours for review of the court order granting that motion.  (Ex. A to Zelman Aff. at 3.)  It is unreasonable to spend 18 minutes reviewing a motion to substitute one Assistant Corporation Counsel for another, when there is no need for input from Plaintiff.

Many other unreasonable time entries relate to "reviewing" court orders and participation in court conferences.  For example, on March 31, 2016, Zelman billed 0.40 hours to "review court order." (Ex. A to Zelman Aff. at 5.)  The court order entered on the docket that day states in its entirety: "ORDER granting Motion for Extension of Time to Complete Discovery. The deadline to complete depositions **is extended to May 6, 2016.** The parties are to file a status report by **May 7, 2016.**"  Taking 24 minutes to review this simple order is unreasonable.  On August 11, 2016, Zelman billed 0.20 hours to "review court order directing defendants to respond to plaintiff's motion for reconsideration."  (Ex. A to Zelman Aff. at 6.)  Taking 12 minutes to read an order that states simply, "ORDER directing defendants to respond to plaintiff's MOTION for Reconsideration by 8/17/2016" is similarly unreasonable.  Furthermore, On March 18, 2016, Zelman billed 0.70 hours (42 minutes) for a 25-minute telephone conference with the Court, which is excessive.

####        d.   Unnecessary Motion Practice

Defendants contend that attorneys' fees for time spent on certain tasks should not be awarded because they related to ultimately unnecessary motion practice.  (Defs.' Opp. at 10.)  Primarily, Defendants argue that Plaintiff's stipulation voluntarily dismissing claims for excessive force and municipal liability did not go far enough, leaving Defendants "forced" to move for summary judgment with respect to the claims against certain officers, a motion they ultimately won.  (*Id.* at 11.)  If Zelman had been more reasonable, Defendants argue, the parties would not have engaged in this motion practice and 39 hours billed by Plaintiff's counsel could have been avoided.

10

(*Id.*)

Courts have reduced attorneys' fees "for work done on motions that were never filed, on claims that were abandoned, on motions that were unreasonable or had little chance of success, and on submissions that failed to comply with court orders." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008). This does not appear to be what happened here. Emails submitted by Defendants in support of this argument show that both sides were attempting reasonably to limit motion practice. On August 15, 2016, Defendants' counsel urged Plaintiff to remove two of the defendants, writing that he "recognize[d] that plaintiff is being reasonable by agreeing to withdraw the non-false arrest and non-mal. pros. claims…." (Ex. G to Smith Decl. at 2, Dkt. 106-7). In reply, Plaintiff's counsel proposes to limit claims and dispute only one officer's liability, adding that it "really cuts down on the work … your 56.1 can be tailored, my opp can be 5 pages or less." (*Id.*) Defendants' counsel then writes that they could have an agreement based on Plaintiff's suggestion: "It would not allow us to avoid motion practice altogether but it would make motion practice more narrow and manageable for both sides as you point out." (*Id.* at 1.) Given these efforts to limit the scope of summary judgment motion practice, it does not appear that Plaintiff's counsel's approach was unreasonable.

Accordingly, the undersigned finds that the hours Plaintiff's counsel spent defending Defendants' motion should not be excluded.

"The Court has the discretion to reduce an unreasonable fee by a fixed percentage rather than attempt line-by-line reductions." *Vazquez v. Ranieri Cheese Corp.*, No. 07-CV-464 (ENV) (VVP), 2011 WL 554695, at *3 (E.D.N.Y. Feb. 7, 2011); *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *5316 Church Ave., LLC v. Yhun*, No. 14-CV-7376 (FB) (RER), 2018 WL 6204615, at *3–4 (E.D.N.Y. July 18, 2018), *R&R adopted as modified*, No. 14-CV-7376 (FB) (RER), 2018 WL 6201709 (E.D.N.Y. Nov. 28, 2018) ("'across-the-board' percentage cut is most practical.").

11

Based on the above, the undersigned respectfully recommends a 10% reduction in the hours billed by Zelman (158.60) and Rabin (4.30), resulting in 142.74 hours for Zelman and 3.87 hours for Rabin.[4]

Accordingly, the undersigned respectfully recommends an award of $49,959 for Zelman, $387 for Rabin, $1,050 for Tey, $180 for Cweibeker, and $2,000 for Padilla, for a total of $53,576.[5]

## II. Fees on Fees

Plaintiff seeks the award of fees incurred in preparing this fee application, even though they were incurred after the Rule 68 Offer was extended and accepted. (Zelman Aff. ¶17.) Defendants contend that acceptance of the Rule 68 Offer forecloses any fees for work performed after the date the offer was made, based on its clear language: "Plaintiff … to take a judgment … for the total sum of Fifteen Thousand and One ($15,0001.00) Dollars, plus reasonable attorneys' fees, expenses, and costs *to the date of this offer* for plaintiff's federal claims." (emphasis added) (Rule 68 Offer at 1.)

In general, "whenever the underlying costs are allowed, time spent on preparing and defending a fee application [is] compensable." (*Id.* ¶ 32.) *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996); *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980).

Courts in the Second Circuit had disagreed about the permissibility of awarding "fees on fees" when the unambiguous language of an accepted Rule 68 Offer limits recovery of attorneys' fees to those incurred before the date of the offer. Some courts applied "ordinary contract principles," and rejected "fees on fees" when terms of the Rule 68 offer have limited recovery to fees incurred to the date of the offer. *See, e.g., Struthers v. City of New York*, No. 12-CV-242, 2013 WL

---

[4] Zelman billed a total of 174.90 hours, with 16.3 hours being billed as "fees on fees" as discussed *infra*. (Ex. A to Zelman Aff. at 11.)
[5] $350 x 142.74 hours (Zelman), $100 x 3.87 hours (Rabin), $100 x 10.50 hours (Tey), $100 x 1.80 hours (Cweibeker), and $200 x 10 hours (Padilla).

12

5407221, at *4 (E.D.N.Y. Sept. 25, 2013) (quotation omitted). Those courts only recognized an exception to this hard line if a defendant disputes the fee motion "in bad faith." *Long v. City of New York*, No. 09 Civ. 6099 (AKH), 2010 U.S. Dist. LEXIS 81020, at *5-6 (S.D.N.Y. Aug. 6, 2010). Other courts concluded that "as a matter of equity, plaintiff should be awarded some amount" for the time spent preparing a fee application, reasoning that, by not settling attorneys' fees before judgment, the defendant is "put on notice that time spent by counsel in seeking fees would become a component of 'reasonable attorney's fees'" authorized by Section 1988. *Rosado v. City of New York*, 11-CV-4285 (SAS), 2012 WL 955510, at *6 (S.D.N.Y. Mar. 15, 2012); *see also, e.g., John v. Demaio*, 15-CV-6094 (NGG)(CLP) 2016 US Dist. LEXIS 177578, at *6-7 (E.D.N.Y. Dec. 21, 2016); *Hassan v. New York City*, 2014 U.S. Dist. LEXIS 26194, *23-24 (E.D.N.Y., February 10, 2014); *Lee v. Santiago*, 12-CV-2558 (PAE) (DF), 2013 WL 4830951, at *13 (S.D.N.Y. Sept. 10, 2013); *Tucker v. City of New York*, 704 F. Supp. 2d 347, 358 (S.D.N.Y. 2010).

The Second Circuit put this issue to rest in *Lilly v. City of New York*, 934 F.3d 222 (2d Cir. 2019), reversing a district court award of "fees on fees" where the Rule 68 offer contained language identical to that in the present case. It ruled that "an accepted Rule 68 offer of judgment is a contract, and it must be interpreted according to ordinary contract principles." *Id.* at 235. Explicitly rejecting the "equitable" approach taken by some courts, the Court stated,

> As noble as this practice may be, it violates the first principle of contract interpretation: 'where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms.' By awarding [plaintiff] fees beyond what the parties agreed to, the district court effectively rewrote the contract. This it cannot do.

*Id.* at 236 (*quoting Steiner v. Lewmar, Inc.*, 816 F.3d 26, 31 (2d Cir. 2016)). The Court concluded, that when the Rule 68 offer "cuts off a plaintiff's entitlement to attorney's fees on a specific date, a district court may not award a party attorney's fees for work incurred after that cut-off date," including fees for work performed preparing the fee application "in the event the parties are unable

13

to agree on the attorney's fees to be awarded despite a good faith effort to negotiate." *Id.* at 237.

Plaintiff concedes that the parties met in a good faith effort to negotiate fees. (Zelman Aff. ¶ 36.) Accordingly, the undersigned respectfully recommends that fees incurred after the date of the Rule 68 Offer, including fees for work in the preparation of the fee application, not be awarded to Plaintiff.

### III. Costs and Interest

The Second Circuit has found that a prevailing plaintiff in Section 1983 litigation is entitled to "those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (quoting *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C. Cir.1984)).

Plaintiff seeks costs in the amount of $1,993.80. (Zelman Reply ¶ 18.) Defendants argue that costs are improper and that Plaintiff's dismissal of several defendants that were deposed should preclude Plaintiff from seeking fees related to those depositions. (Defs. Opp. at 22-23.) Defendants provide no evidence that the defendants who were eventually dismissed were originally named in bad faith.

Plaintiff provides an itemized statement of the costs in this matter. (Ex. A to Zelman Aff. at 11-12.) The undersigned finds the itemized statement reasonable and respectfully recommends an award of costs in the amount of $1,993.80.

Plaintiff also seeks interest on the costs. (Zelman Aff. ¶ 38.) Defendants oppose the awarding of post-judgment interest, arguing that acceptance of the Rule 68 Offer forecloses any award of interest: "Acceptance of this offer of judgment also will operate to waive plaintiff's rights to any claim for interest on the amount of the judgement." (Defs. Opp. at 23; Rule 68 Offer at 2.) The undersigned agrees. The plain language of the Rule 68 Offer shows that Plaintiff waived his claim to interest. *See Penley v. City of New York,* 2015 WL 5256979 (S.D.N.Y 2015). Accordingly, the

14

undersigned finds no basis for awarding post-judgment interest.

## **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that the Court grant Plaintiff's Motion for Attorneys' Fees, awarding a total of $53,576 in attorneys' fees and $1,993.80 in costs.  Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).


Dated:  Brooklyn, New York
         March 16, 2020

                                              **SO ORDERED:**

                                              *Peggy Kuo*
                                              PEGGY KUO
                                              United States Magistrate Judge